**ULLMAN, FURHMAN & PLATT, P.C.**
Attorneys for Plaintiffs John E. Rudder, Jr., Joseph F. Ackerman, III and Terry Hanson
89 Headquarters Plaza
North Tower, Twelfth Floor
Morristown, New Jersey 07960
(973) 993-1744
Facsimile:  (973) 993-1748
E-Mail: *ullman@ufplaw.com*
(JU3590)

**SCHENKMAN, JENNINGS & HOWARD, LLC**
Attorneys for Plaintiff Michael Ames
2109 Pennington Road
West Trenton, New Jersey 08638
(609) 883-8000

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN E. RUDDER, Jr., individually, and derivatively on behalf of Nominal Defendant, COMPREHENSIVE MARKETING, INC., MICHAEL AMES, JOSEPH F. ACKERMAN, III and TERRY HANSON, <br><br> Plaintiffs, <br><br> —*vs*— <br><br> JAMES BLAZEWICZ and BETTY BLAZEWICZ, <br><br> Defendants. | Civil Action No. 06–5711(AET) <br><br> **CIVIL ACTION** <br><br> **AMENDED VERIFIED COMPLAINT** |

Plaintiffs John E. Rudder, Jr., residing at Neshanic Station, New Jersey, Joseph F.

Ackerman, III, residing at Cordova, Tennessee, and Terry Hanson, residing at Raleigh, North

Carolina, by their attorneys, ULLMAN, FURHMAN & PLATT, P.C., and plaintiff Michael Ames,

residing at West Windsor, New Jersey, by his attorneys, Schenkman, Jennings & Howard, LLC, as

and for their complaint herein, allege, upon information and belief:

1.    Plaintiff John E. Rudder, Jr., ("Rudder") is a citizen and resident of the State of New Jersey, residing at Neshanic Station, County of Somerset, State of New Jersey.

2.    At all times relevant hereto, plaintiff is and has been a minority shareholder in nominal defendant Comprehensive Marketing, Inc. ("CMI" or "the Corporation"), owning fifteen percent of CMI's issued and outstanding shares.

3.    Plaintiff Michael Ames ("Ames") is a citizen and resident of the State of New Jersey, residing at West Windsor Township, New Jersey.

4.    At all times relevant hereto, Ames was and is a minority shareholder of CMI, owning fifteen percent of CMI's issued and outstanding shares.

5.    Plaintiff Joseph F. Ackerman, III ("Ackerman"), is a citizen and resident of the State of Tennessee, residing at 1911 Brent Cove, Cordova, Tennessee.

6.    At all times relevant hereto, Ackerman was and is a minority Shareholder of CMI, owning fifteen percent of CMI's issued and outstanding shares.

7.    At all times relevant hereto, Ackerman was and is a corporate officer and director of CMI, holding the office of Vice President.  Ackerman managed CMI's offices in Tennessee.

8.    Plaintiff Terry Hanson ("Hanson") is a citizen and resident of the State of North Carolina, residing at 12420 Schoolhouse Street, Raleigh, North Carolina.

9.    At all times relevant hereto, Hanson was and is a minority shareholder of CMI, holding four percent of CMI's issued and outstanding shares.

10.   CMI is a foreign corporation organized under the laws of the Commonwealth of

Pennsylvania and authorized to transact business in the State of New Jersey, having an office for the transaction of such business at 850 Bear Tavern Road, Ewing Township, New Jersey. Although it was originally incorporated as a Pennsylvania, CMI has no office in Pennsylvania, presently maintaining offices only in New Jersey and in Memphis, Tennessee, the former being its principal office, the latter being a satellite office which is now closed.

11.     Defendants James Blazewicz and Betty Blazewicz ("the Blazewiczs") are husband and wife and are citizens and residents of the Commonwealth of Pennsylvania, residing at Terrell Drive, Washington Crossing, Pennsylvania.

12.     At all times relevant hereto, the Blazewiczs were the joint owners of fifty-one percent of CMI's issued and outstanding shares.

13.     Defendant James Blazewicz is, and at all times relevant hereto was, CMI's President and Chief Executive Officer.

14.     Defendant Betty Blazewicz is, and, since December 20, 2002, has at all times relevant hereto been, CMI's Secretary.

15.     Plaintiffs, together with defendants James Blazewicz and Betty Blazewicz, constitute all of the shareholders of CMI.

16.     Incorporated in 1993, CMI has been engaged in business since then as a provider of highly specialized marketing and technology services to agricultural companies and others.  These services consisted, primarily, of administering rebate programs and using computer technology to track the sale of genetically modified seeds and other agricultural products through the chain of distribution.

**Verified Complaint**
**Page (3)**

17.   Plaintiff Rudder acquired his shares in CMI by purchase in 2002.  From 2002 through 2004, plaintiff was a Vice President of CMI, and participated the company's management.  At all times, however, the Blazewicz defendants used their position as majority shareholders and as President and Secretary, respectively, of CMI to operate CMI and control its management.

18.   In the years prior to plaintiff's acquisition of his shares in CMI, the Corporation had made lavish distributions of cash to its shareholders, including the Blazewiczs', which were carried on the Corporation's books as "loans to shareholders."

19.   In addition, in 1999, CMI had loaned defendant James Blazewicz $145,000.00, which Blazewicz thereupon used to purchase sufficient shares in CMI to give him majority control. At the time of Rudder's acquisition of his shares in CMI, the total amount of these loans ("the Shareholder Loans"), as shown on the Corporation's books, was approximately $450,000.00.  Plaintiff fully expected, at the time of his acquisition of his shares, that these loans would be repaid to the Corporation.

20.   In or about February, 2003, less than a year after plaintiff became a shareholder and officer, CMI's management sought and obtained a commercial loan from Yardville National Bank ("YNB") in the sum of $750,000.00 for the purpose of consolidating and paying off certain then outstanding indebtedness incurred prior to plaintiff's acquisition of his shares ("the YNB Loan").

21.   The YNB Loan was used to pay off existing debt of $614,286.38.  Of the remaining principal amount of the YNB Loan, $133,235.62 was deposited in a money market account at Yardville National Bank ("the YNB Money Market Account"), and the balance, $2,478.00,

**Verified Complaint**
**Page (4)**

was disbursed to cover the cost of counsel fees, recording charges and other costs associated with the closing of the loan.

22.  The YNB Money Market Account was to serve as cash collateral for the YNB Loan, and, to plaintiffs' understanding, was not then and is not now subject to invasion by CMI, except for purposes of paying off the YNB Loan.

23.  The YNB Loan was further collateralized by personal guarantees from plaintiff, Ames, Ackerman and defendant James Blazewicz. Although James Blazewicz and Betty Blazewicz jointly owned 51% of CMI's issued and outstanding shares, and although Betty Blazewicz had been a guarantor on certain of the loans which were being consolidated and paid off, Betty Blazewicz was exempted from the guarantees of the new YNB loan, a condition of the YNB Loan which James Blazewicz negotiated with YNB.

24.  Rudder and Ames objected to the exemption of Betty Blazewicz from the guarantees, and demanded that all shareholders should undertake that burden equally, in accordance with their respective percentages of ownership. Defendants James and Betty Blazewicz rejected plaintiff's demand, and refused to include Betty Blazewicz as a guarantor.

25.  During 2003, CMI's revenues began to decline dramatically, as a result of a loss of some of its larger customers. The shrinkage of CMI's customer base was due, primarily, to the fact that these customers began to "in-source" the technology functions which CMI had performed for these customers on a contract basis.

26.  In response to the decline in its revenues, plaintiffs urged the Blazewicz' to consolidate functions, reduce expenses and otherwise cut back on CMI's costs of doing business.

**Verified Complaint**
**Page (5)**

27.     The Blazewiczs' did reduce plaintiffs' salary and the salary of other employees, but refused plaintiff's demand for further cutbacks in business overhead, sufficient to keep expenses below revenues.  The Blazewiczs' made no attempt to pay back any of the sums which the Corporation carried on its books as the Shareholder Loans.

28.     Through 2004, CMI's decline continued, and a financial crisis loomed.  Rudder informed the Blazewicz' that he had located a prospective buyer of CMI's business, who would be willing to undertake the company's debts and pay a modest sum for its assets.  Ames, also a member of CMI's board of directors, supported plaintiff's position, as did Ackerman.  Together, plaintiff, Ames and Ackerman constituted a majority of the Board.

29.     The Blazewicz' responded by using their majority position to vote plaintiff and Ackerman off CMI's Board of Directors, and to cause them to be replaced by another member of the Blazewicz family and another Blazewicz supporter, thus preventing plaintiff and the other directors who supported his position, from having a majority of the Board in favor of the prospective third party purchase of CMI's assets, and the assumption of its debt.  Plaintiff's removal from the Board of Directors of the Corporation frustrated his reasonable expectations.

30.     During this time, CMI had an unused line of credit with YNB in the amount of $350,000.00 ("the First YNB Credit Line"). The First YNB Credit Line had not been tapped.  Eventually, the credit line expired in late 2004.

31.     During the latter part of 2004, as CMI's financial crisis deepened, defendant James Blazewicz began to pressure plaintiffs to agree to apply for a new credit line ("the Second

YNB Credit Line) from YNB Credit Line.  Plaintiffs resisted these attempts by the Blazewiczs' to further enlarge CMI's debt, as no agreement existed among CMI's Directors as to how or when the line could be used, and as to the nature of the signatory authority required to draw funds on it.

32.   By December, 2004, Rudder and Ames resigned as officers of CMI and as employees, terminating their relationship with CMI in all capacities, except as shareholders.  Ackerman continued to manage CMI's facilities in Tennessee.

33.   In January, 2005, Rudder and other plaintiffs notified YNB that he would not serve as a guarantor for any debt incurred by CMI on or after the date of the notice.

34.   Shortly thereafter, contrary to plaintiff's requests and contrary to sound business practice, CMI, now under the Blazewicz' unfettered control, obtained and drew down the Second YNB Credit Line, in the amount of $200,000.00, deepening and enlarging CMI's debt and further frustrating plaintiff's reasonable expectations.

35.   While plaintiff has no direct personal liability for the Second YNB Credit Line, the existence of this debt places an additional burden on CMI's already diminishing resources, and thus enhances the probability that plaintiff will have a significant personal liability exposure on the YNB Loan of which he is a guarantor.  This act further frustrates plaintiff's reasonable expectations as a shareholder.

36.   To a significant degree, the Second YNB Credit Line was used to finance an ill-fated prospective merger between CMI and a minority owned start-up enterprise, "Interactive Business Systems of NJ, LLC," ("IBS") a New Jersey limited liability company.

37.     IBS was a shell entity which had been formed in November, 2004, by its majority owner, Claude R. Pelzer ("Pelzer") and others for the purpose of providing data processing, and data management services for major cable providers as a minority owned and controlled business. From its inception, IBS lacked any of the experience, financial capability, hardware or software infrastructure or personnel capable of delivering any such technology services.

38.     Beginning in early 2005, IBS and Pelzer approached Blazewicz and CMI about a possible merger of the two companies, by means of which IBS could acquire the components necessary for the conduct of its business – experience, infrastructure and personnel – which it lacked, but which CMI had.

39.     IBS proposed a merger with CMI, with IBS emerging as the surviving entity, pursuant to which IBS would purchase CMI for approximately $1.3 million, including an assumption of all of CMI's debt.  This sum would represent a payout to shareholders of approximately $800,000.00, to be distributed ratably among the shareholders.  Acceptance of the proposal would have represented a loss to each of the plaintiff shareholders on his investment in CMI.

40.     As a further inducement to the proposed merger, IBS secretly offered an employment contract to defendant Jim Blazewicz pursuant to which Blazewicz would become employed by IBS following the merger, for approximately $1.2 million, in *addition* to the sums to be paid to Blazewicz for his shares in CMI.

41.     In April, 2005, IBS submitted a formal Letter of Intent expressing its intention to purchase CMI provided a firm agreement to that effect were in place by May 1, 2005.

42.     Significantly, the Letter of Intent failed completely to reference or disclose the proposed

employment contract between IBS and Blazewicz.

43.     In July, 2005, at a CMI shareholders meeting, defendant Jim Blazewicz provided plaintiffs with a "Summary" of the terms of a proposed merger/acquisition of CMI by IBS.  Blazewicz told plaintiffs that the proposed deal would be in the best interests of CMI and the shareholders. However, Blazewicz failed to disclose his personal interest in the proposed transaction, in the form of his expected $1.2 million dollar employment agreement with IBS, nor did he tell his fellow shareholders that IBS' Letter of Intent, originally delivered in April, 2005, had already expired two months earlier, without an agreement having been signed.

44.     Beginning in April, 2005, without shareholder knowledge or consent, and continuing through 2006, and notwithstanding the fiscal crisis which had enveloped it, CMI, under the control of the Blazewiczs', expended hundreds of thousands of dollars – much of it borrowed funds – "chasing" the prospective merger with IBS.  To that end, CMI:

    a.      Entered into a sublease with IBS for the use of CMI offices and facilities, in April, 2005, at an annual rental of $106,032.00, no part of which was ever paid.

    b.      Employed Pelzer, IBS' principal owner, in a no-show job, paid him a salary and provided free medical benefits to him, at CMI's cost and expense in the sum of more than $20,000.00.

    c.      Purchased, at an acquisition cost of over $100,000.00, computer software useless to CMI, but valuable to IBS if the merger occurred.

    d.      Authorized and permitted IBS to use CMI's resources and personnel at CMI's cost and expense without compensation of any kind.

**Verified Complaint**
**Page (9)**

    e.      Caused stationery, signs and business cards to be prepared which falsely identified CMI's personnel and facilities as if they were IBS'.

    f.      Paid travel, telephone, meals, lodging  and other business expenses for Pelzer and other IBS employees without compensation to CMI.

45.    The net effect of these substantial disbursements was to consume CMI's limited resources, and enhance its debt, further reducing any benefit which plaintiff shareholders would have gained from any merger/acquisition with IBS, inasmuch as the proposed buyout amount was to be applied, first, to repayment of corporate debt, and only thereafter, to shareholders for their shares.  By the same token, however, these expenditures enhanced the benefit to Blazewicz of his employment by and participation in IBS following the merger/acquisition, if it were to occur, by enhancing the value of IBS, at the expense of CMI and to the detriment of the plaintiff shareholders.

46.    In addition, CMI, under Blazewicz' control, authorized and permitted IBS to represent to third parties that CMI's facilities, employees and assets belonged to IBS, despite the fact that no merger had occurred, no merger plan or merger agreement were in place and that the shareholders of CMI had not authorized these acts.  These false representations occurred in connection with general meetings with banks and other funding sources, in consultations with prospective clients and in connection with activities related to IBS' efforts to obtain governmental certification as a bona fide minority enterprise.

47.    IBS issued a second Letter of Intent to CMI in November, 2005, but no merger transaction was ever consummated, no agreement to merge, or otherwise, was ever signed between the

parties and no plan of merger was ever authorized or agreed to by the plaintiff shareholders.

48.     In all, CMI expended over $500,000.00 in the ill-fated effort to consummate a merger with IBS, and to secure for defendant Jim Blazewicz the benefit of his undisclosed million dollar employment contract with IBS.

49.     In or about July, 2006, CMI commenced an action against IBS for breach of contract, unjust enrichment and other claims in the Superior Court of New Jersey, Law Division, Mercer County, entitled *Comprehensive Marketing, Inc. v. Interactive Business Systems of New Jersey, LLC,* under Docket Number L–2003–06.  This action is pending.

50.     The IBS fiasco – to which the Blazewicz's mismanagement, self-dealing, fraud and abuse of authority contributed substantially – pushed CMI over the financial brink.  By 2006, it had become clear that CMI could not recover from the fiscal crisis which had begun in 2003-04.  CMI's management – the Blazewiczs' – continued to refuse to rein in expenses or otherwise to make the corporate sacrifices necessary to survive, and continued to fail to make any effort to recoup the Shareholder Loans.  By the summer of 2006, CMI was operating at a loss exceeding $12,000.00 per month.

51.     During this time, plaintiff repeatedly and insistently sought financial information and that CMI provide an action plan for addressing its financial difficulties.  Except for bland assurances that matters might improve, however, and to ask that plaintiff agree to certain modifications of the YNB Loan, CMI failed and refused to provide any detailed information concerning its financial status, failed and refused to reduce its operating overhead and failed and refused to provide an action plan for addressing CMI's precarious fiscal position.

52.   In September, 2006, plaintiff demanded that CMI discontinue its business and begin to wind up its affairs.  CMI ignored the demand.

53.   By letter dated October 4, 2006, plaintiff's retained counsel wrote to CMI and repeated this demand, and also demanded that CMI provide an "action plan, stating what specific steps it has taken and what steps it intends to take to conclude its business and collect the debts due to it...[and] that the Corporation account to its shareholders for its activities since the beginning of the 2006 year."

54.   CMI and the Blazewiczs' have ignored these demands, and have even failed to acknowledge receipt of the letter from plaintiff's attorney.

55.   Plaintiff has no current information as to CMI's financial position, the state of its receivables, the size of its debt or what, if anything, the Blazewiczs' are doing to address CMI's needs and to protect CMI shareholders.

<u>COUNT ONE</u>

56.   Plaintiff repeats and realleges each and every fact set forth in paragraphs 1 through 55 hereof, as if the same were set forth at length.

57.   The foregoing facts show that CMI is a corporation having fewer than 25 shareholders and that its controlling directors, the Blazewiczs' have acted fraudulently or illegally, particularly with regard to the prospective "merger" with IBS.

58.   The foregoing facts show that CMI is a corporation having fewer than 25 shareholders whose controlling directors, the Blazewiczs', have mismanaged the corporation or abused their authority as officers and directors, or have acted oppressively or unfairly toward plaintiff, a

**Verified Complaint**
**Page (12)**

minority shareholder of the Corporation, in his capacity as a shareholder.

59.   The Blazewiczs' Defendants' conduct has been arbitrary, vexatious and not in good faith, and in dereliction of their fiduciary duties to plaintiff and the Corporation's other minority shareholders.

60.   By reason of the foregoing, plaintiff is entitled to relief pursuant to *N.J.S.A.* 14A:12-7,  and 15 *Pa.C.S.A.* §1767, as applicable, appointing a custodian to dissolve the corporation, wind up its affairs and to collect all sums due and owing to it, or granting such other and further relief as may be just and proper in the circumstances.

<u>COUNT TWO</u>

61.   Plaintiff repeats and realleges each and every fact set forth in paragraphs 1 through 55 hereof, as if the same were set forth at length.

62.   The foregoing facts show that the Blazewiczs' have acted in their own personal interest to the detriment of minority shareholders, in breach of their fiduciary obligations to plaintiff.

63.   By reason of the foregoing, plaintiff is entitled to relief.

<u>COUNT THREE</u>

64.   Plaintiff repeats and realleges each and every fact set forth in paragraphs 1 through 55 hereof, as if the same were set forth at length.

65.   The Corporation's management has failed and refused, despite the reasonable request of shareholders, to recover hundreds of thousands of dollars in debt owed to the Corporation by the Blazewiczs'

66.   Inasmuch as the Blazewiczs' remain in control of the management of the Corporation, it is

**Verified Complaint**
**Page (13)**

unreasonable to expect that they will act to collect this debt owed to the Corporation.

67.   Plaintiff has demanded and through counsel repeated the demand that the Corporation actively collect this indebtedness, but the Corporation has failed and refused to respond meaningfully to this demand or, to the best of plaintiff's knowledge, to take any affirmative steps toward collecting the debt.

68.   By reason of the foregoing, plaintiff, in the name and interest of the Corporation, seeks to collect these sums.

69.   Pursuant to Rule 23.1, **Fed.R.Civ.Proc.,** the within complaint has been verified; the action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have; and the plaintiffs' efforts to obtain the actions which plaintiffs desire from the corporation are as set forth herein.  By reason of defendant Jim Blazewiczs' self dealing, breach of fiduciary duty, failure and refusal to reign in corporate expense, and by further reason of the fact that Blazewicz is himself indebted to the corporation for hundreds of thousands of dollars, this derivative action is necessary to permit the corporation to recover all sums to which it is entitled.

70.   The Blazewiczs' have failed and refused to pay their share of the Shareholder Loans, despite due demand therefor.

71.   By reason thereof, the Corporation is entitled to judgment against the Blazewiczs', jointly and severally, for the amount of the debt.

WHEREFORE, plaintiff demands judgment:

1.   As to Count One of the Verified Complaint herein, appointing a custodian to take over

**Verified Complaint**
**Page (14)**

control of the Corporation and to see to its dissolution, the collection of all sums due to it, including debts owed by shareholders of the Corporation, and to otherwise manage the orderly wind up of its affairs; directing the Corporation to pay the YNB Loan in preference to the Second YNB Line of Credit and other debts and obligations; awarding plaintiff the costs and expenses of this litigation, including reasonable counsel fees as against Defendants James and Betty Blazewicz; and granting such other, further and different relief as to the Court may seem just and proper.

2.      As to Count Two of the Verified Complaint here, awarding plaintiff compensatory damages against the Blazewiczs, and such other, further and different relief as to the Court may seem just and proper.

3.      As to Count Three of the Verified Complaint, awarding CMI judgment against the Blazewiczs, jointly and severally, in the full amount of their debt to CMI, and granting such other, further and different relief as to the Court may seem just and proper.

ULLMAN, FURHMAN & PLATT, P.C.

By: /s/Jeffrey D. Ullman
    Jeffrey D. Ullman, Esq.
    A Member of the Firm

Dated: Morristown, New Jersey
       December 8, 2006

**VERIFICATION**

JOHN E. RUDDER, JR., being of full age, hereby certifies and says:

I have read the foregoing Verified Complaint, and the same is true of my own personal knowledge except as to matters alleged upon information and belief, and, as to such

**Verified Complaint**
**Page (15)**

matters, I believe them to be true.   I understand that if any of the foregoing statement is willfully false, I am liable to punishment.

                                                /s/ John E. Rudder, Jr.
                                                John E. Rudder, Jr.

Dated: Morristown, New Jersey
        December 8, 2006